Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons and
Agee, JJ., and Russell, S.J.

CITY OF MARTINSVILLE                    OPINION BY
                              SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 040218              November 5, 2004

COMMONWEALTH BOULEVARD ASSOCIATES, LLC


             FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                      Charles M. Stone, Judge

     This appeal presents the question whether a taxpayer is

entitled to relief under Code § 58.1-3984 for real estate

taxes erroneously assessed during the interim between general

reassessments.  More specifically, may the taxpayer challenge

an annual levy of taxes without showing that the previous

general reassessment, upon which the annual levy was based,

was erroneous?  We answer the question in the affirmative.

     The trial court decided the case on cross-motions for

summary judgment and the facts, except as to valuation, are

undisputed.  Pursuant to Code § 58.1-3250,the City of

Martinsville (the City) conducts a general reassessment of the

real estate within the City every two years.  Tax years run

from July 1 to the following June 30.  See Code § 15.2-2500

(prescribing uniform fiscal year for localities from July 1 to

June 30).  The annual levies are based upon valuations set by

the previous general reassessment.  The subject of this appeal

is a tract of industrial land containing 22.829 acres improved

by a large manufacturing plant formerly owned by the Tultex Corporation. The City conducted a general reassessment of land on January 1, 1999 in which the property was assigned a valuation of $12,408,700. At that time, the Tultex plant was active. The January 1, 1999 assessment set the valuation that would govern the annual levies of taxes from July 1, 1999 to June 30, 2001.

On December 3, 1999, the Tultex Corporation filed for Chapter 11 bankruptcy. About a year later, the present owner, Commonwealth Boulevard Associates, LLC, (CBA) applied for a bank loan to finance the purchase of the property subject to the approval of the bankruptcy court. Pursuant to the lender's requirements, a professional appraisal was made in which the property, by then vacant and "essentially gutted," was valued at a fair market value of $2,375,000 as of December 5, 2000. On January 4, 2001, CBA purchased the property from the Tultex Corporation, with the approval of the bankruptcy court, for $750,000.

Four days before the sale, on January 1, 2001, the City had conducted its next general reassessment, which would govern its annual real estate tax levies from July 1, 2001 until June 30, 2003. That assessment assigned a fair market value of $4,128,386 to the former Tultex property. Id.

From January 4, 2001, when CBA acquired the property until June 30, 2001 when the new tax year began, the City continued to base its levy on the 1999 general reassessment valuation of $12,408,700. CBA paid the taxes for that period, amounting to approximately $58,321.

CBA brought this suit for relief from an erroneous assessment under Code § 58.1-3984. The trial court, in a written opinion, agreed with CBA's contention that the levy for the first half of 2001 was based on an erroneous assessment. The trial court granted summary judgment in CBA's favor and reduced the assessed valuation of the Tultex property for that period to $2,375,000, based upon the evidence of the independent appraisal made for the lender. The trial court also ordered a refund of the taxes CBA had paid for the first half of 2001. We awarded the City an appeal.

The City contends that annual levies of taxes must be based only on valuations established by the previous general reassessment, and that, with certain exceptions not pertinent here, a taxpayer seeking relief from taxes levied in the interim must prove that the previous general reassessment was erroneous when originally made. The City points out that CBA made no contention that the 1999 general reassessment was erroneous when made. Indeed, argues the City, in 1999 the

3

Tultex plant was a going concern in full operation and the $12,408,700 valuation was "entirely appropriate." CBA contended only that the annual levy for the first half of 2001, based on the 1999 valuation of $12.4 million, was clearly erroneous based on the City's own valuation of $4.1 million as of January 1, 2001 and the independent appraisal of $2.3 million made the previous month.

Code § 58.1-3984(A) provides, in pertinent part,

> Any person assessed with local taxes, aggrieved by any such assessment, may . . . (a) within three years from the last day of the tax year for which any such assessment is made, [or] (b) within one year from the date of the assessment, whichever . . . is later, apply for relief to the circuit court of the county or city wherein such assessment was made.

The City argues that the term "assessment," as used in this section, refers only to the periodic general reassessments upon which the annual levies of taxes are based. We held, however, in Hoffman v. Augusta County, 206 Va. 799, 146 S.E.2d 249 (1966) that the word "assessment," as used in the tax laws, had two meanings. It could refer either to a periodic general reassessment or to the annual levy of taxes based upon that valuation. The General Assembly, we said, had "made clear that the remedy provided by Code § 58-1145 [the statutory predecessor of present Code § 58.1-3984] shall be available to a landowner to attack an assessment in whichever

4

of its two meanings the word is employed." Id. 206 Va. at 802, 146 S.E.2d. at 251.

The City terms this language "dictum." We do not agree. It was essential to the holding in Hoffman and states a rule to which we adhere. A taxpayer is entitled to relief under Code § 58.1-3984 if he carries his burden of proving that in either the general reassessment or in the annual levy of taxes "the property in question is valued at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal." Code § 58.1-3984. The trial court correctly so ruled.

The trial court, considering the conflicting evidence of value, found that the property was valued for tax purposes at more than its fair market value for the first half of 2001. The trial court was thereupon empowered to "reduce the assessment to what in its opinion, based on the evidence is the fair market value of the property involved " and also to order repayment of the taxes already paid pursuant to the erroneous assessment. Code § 58.1-3987. The evidence in the record fully supports the court's finding and we will affirm the judgment.

Affirmed.